IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERNEST TARASOVSKY,

    Plaintiff,

v.

STRATIFY, INC. GROUP SHORT AND LONG TERM DISABILITY PLAN, and THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,

    Defendants.

No. C 11-03359 WHA

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND VACATING MAY 23 HEARING**

## INTRODUCTION

In this ERISA action, the parties file cross-motions for summary judgment. For the reasons stated below, the motions are **DENIED**. The hearing scheduled for May 23 is **VACATED**.

## STATEMENT

Defendants are Guardian Life Insurance Company of America and the Stratify Inc. Group Short and Long Term Disability Plan. Plaintiff Ernest Tarasovsky is a computer scientist who specializes in information security. Between September 2008 to August 2009, plaintiff worked at Stratify, Inc. as an information security manager (AR 244). Plaintiff alleges that his many years spent working on a computer caused him to develop so much neck, arm and shoulder pain that he had to stop working in August 2009. He was 35 years old at the time. Accordingly, he filed for short and long term disability benefits caused by repetitive stress disorder. Defendants denied his request for disability benefits based on an "independent" medical examination paid for by defendants.

The Plan defines "Disability or Disabled" under STD coverage as: due to a current sickness or injury, the insured is not able to perform, on a full-time basis, his major duties of his own job. The insured is not disabled if he is able to work 40 hours per week at his own job (AR 40–41). Under LTD coverage, "Disability or Disabled" is defined as: due to a sickness or injury, the insured is not able to perform the major duties of his own occupation or any gainful work (AR 61). The term "own occupation" is defined as the insured's "occupation as done in the general labor market in the national economy" (AR 64).

**1. MEDICAL REPORTS.**

Plaintiff filed his short and long term disability claims with Guardian in December 2009 (AR 477). Plaintiff provided several statements and reports from his treating physicians in support of his claims. This order will summarize the physician reports in the administrative record.

After plaintiff quit his job in August 2009, he was seen by Dr. Dale Heer, a chiropractor. Dr. Heer wrote in his report that plaintiff had sustained gradual progressive upper back and neck injury over the past several weeks. And that the pain eventually became so great he could no longer work. Dr. Heer described plaintiff's pain complaints as "constant severe pain in upper back; bilateral trapezius, and neck while working at a computer." Dr. Heer concluded that plaintiff had cervico thoracic myalgia and cervical radiculitis but that plaintiff could return to his regular work in a month (AR 244).

Dr. Heer examined plaintiff again in September 2009. In his report summarizing this visit, Dr. Heer wrote that plaintiff had made only slow progress (AR 245). Dr. Heer recommended physical therapy and subsequently continued as plaintiff's treating physician. Between October 2009 and June 2010, Dr. Heer saw plaintiff approximately eight times, each time reporting that plaintiff's disability continued and became progressively worse (AR 373–74, 484–85, 524–30). By April 2010, Dr. Heer reported that plaintiff was unable to work at a computer for longer than one hour (AR 525).

Plaintiff began physical therapy in November 2009 with physical therapist Daniel Brady. Plaintiff advised Brady that he strained "his neck over several years of computer use" and

2

symptoms "gradually became so bad that he had to stop work." The physical therapist agreed and diagnosed plaintiff with cervical strain (neck strain) due to repetitive use syndrome. Physical therapy was recommended two times a week for four to six weeks (AR 247). In the subsequent months, Brady reported that plaintiff's neck became more and more aggravated by sitting, driving, and doing desk work (AR 249, 252, 262). By March 2010, plaintiff stopped physical therapy.

In February 2010, plaintiff saw another chiropractor, Dr. Rachman Chung, who also diagnosed plaintiff with injuries in the neck and back: sprain/strain, cervical segmental dysfunction, thoracic segmental dysfunction, lumbar segmental dysfunction, and poor balance (AR 257).

In April 2010, plaintiff saw yet another chiropractor, Dr. Moses Jacob, who diagnosed plaintiff with "[c]ervical spine sprain/strain, chronic, with associated right brachial neuritis/radiculitis without radiculopathy" and "[r]epetitive strain injury right upper extremity with measured grip loss" but concluded that plaintiff could return to work with modifications of appropriate breaks and limitations of continuous and ongoing time at the computer (AR 308–10).

In May 2010, plaintiff went to another medical provider, Dr. Gerald Keane, who reviewed plaintiff's x-rays and noted some decrease in plaintiff's anticipated cervical lordosis (curve in the upper spine), some very slight upper thoracic scoliosis (side to side curve), but that the disc spaces in the spine were well preserved and there were no fractures (AR 565). On physical examination, Dr. Keane noted that Tinel's signs, a way to detect irritated nerves, were negative over the median and ulnar nerves on the right in the upper extremity at the elbow and wrist. In conclusion, Dr. Keane's offered a diagnosis of "non-specific cervical pain with upper extremity referral" (AR 566). In subsequent visit a month later, Dr. Keane found that plaintiff was not "really capable of going back to his prior employment." Dr. Keane stated plaintiff had persistent neurologic symptoms and he had not responded to conservative care and that plaintiff's "prior work [was not] within his ability to carry out without risk of further aggravation" (AR 1079–80).

To sum up, the medical record from plaintiff's treating physicians showed that after chiropractic treatment and physical therapy, plaintiff's ability to perform computer work worsened in the eight months after plaintiff quit work.

### 2.  DENIAL OF DISABILITY CLAIMS.

In February 2010, Guardian conducted a medical review of plaintiff's claims to determine if plaintiff's medical documentation supported his disability claim. Guardian initially concluded that plaintiff's disability was not supported by the medical record (AR 157, 174–76). The basis was the lack of diagnostic studies in the record. Another reason given was that there did not appear to be any comprehensive treatment, including physical therapy and medications (AR 176). Guardian notified plaintiff of its preliminary rejection of his disability claims. After receiving Guardian's rejection, plaintiff supplemented his claim with more of the previously-discussed medical reports from Dr. Heer, Dr. Chung and Mr. Brady, and an x-ray ordered by Dr. Heer (AR 331).

After receiving the supplemental information, Guardian decided to arrange for an "independent medical examination" and contacted MLS National Evaluation Services to schedule an appointment for plaintiff. MLS scheduled plaintiff to be examined by Dr. Steven Feinberg, who specialized in physical medicine and rehabilitation (AR 1135–36, 69).

At a May 2010 examination, Dr. Feinberg conducted a review of plaintiff's occupational duties and medical records, discussed with plaintiff his pain complaints, and performed a physical examination. Dr. Feinberg concluded that plaintiff presented himself in a "credible manner" but his physical examination was completely normal other than a reduced right grip. Therefore, Dr. Feinberg found that plaintiff was "somatically preoccupied" (*i.e.*, had complaints of pain without physical manifestation). Dr. Feinberg also concluded that, other than an initial 30-day flair-up in the days before plaintiff quit work, plaintiff was capable of returning to his job as an information security manager (AR 1230–36).

Guardian gave plaintiff an opportunity to respond to Dr. Feinberg's conclusion of nondisability. Plaintiff provided a response from Dr. Heer, who discussed his disagreement with Dr. Feinberg's findings:

4

> In Dr. Feinberg's evaluation he states there was no palpatory discomfort of the musculature and that Mr. Tarasovsky had full and unencumbered cervical range of motion. In my evaluation on initial intake and in may latest office visit on 5/26/10 I did not find this to be true. There was significant discomfort of the cervical and thoracic musculature on digital palpation. There was significant reduction of range of motion of the cervical spine in extension, right lateral flexion, and right rotation . . . . cervical x-rays revealed aberrant mechanical motion at C5 on right lateral bending study, as well as narrowing of the right neural foramen on right posterior oblique view.

(AR 455–56). Subsequently, Dr. Feinberg issued an addendum to his report addressing Dr. Heer's response. Dr. Feinberg wrote that there was nothing in Dr. Heer's response that changed his opinions (AR 1286).

Based on Dr. Feinberg's opinion, Guardian maintained the denial of plaintiff's disability claims (AR 1333–37, 1309–16). The reason given to plaintiff was that "treating physicians have not provided adequate medical evidence in support of their opinion . . . . According to the findings of the [independent medical evaluation] by Dr. Feinberg, you are capable of performing your job . . . . [and that Dr. Feinberg did not change his opinion after responses from treating physicians]" (AR 1312–16). To sum up, Guardian denied benefits because it credited the report of a single examination it ordered through MLS National Medical Evaluation Services which was performed by Dr. Feinberg over multiple reports by plaintiff's treating health care providers. Plaintiff filed an unsuccessful administrative appeal with Guardian.

Plaintiff filed his complaint for this action in July 2011. The case management scheduling order allowed a motion for summary judgment to be filed before opening discovery (Dkt. No. 17). Now, both parties move for summary judgment on plaintiff's ERISA benefits based on the administrative record.

**ANALYSIS**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact-finder

5

to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

### 1.	EXHAUSTION OF ADMINISTRATIVE REMEDIES.

An ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court. However, when an employee benefits plan fails to follow "reasonable claims procedures" consistent with the requirements of ERISA, a claimant need not exhaust because his claims will be deemed exhausted. *Barboza v. California Ass'n of Professional Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011).

Here, once plaintiff notified Guardian that it was administratively appealing the disability denial, Guardian had 45 days to decide the appeal. 29 C.F.R. 2560.503-1(i)(3)(i). If Guardian did not make a decision within 45 days, plaintiff's administrative remedies would have been deemed exhausted under 29 C.F.R. 2560.503-1(l). The parties dispute whether Guardian was timely put on notice that plaintiff was appealing his LTD denial before this action was filed in federal court.

This order finds that plaintiff's administrative remedies were exhausted because Guardian failed to decide plaintiff's appeal within 45 days after notification. This action was filed on July 7, 2011. Therefore, Guardian must have been put on notice by May 24 that plaintiff was filing an administrative appeal and that it had 45 days to decide plaintiff's appeal. Plaintiff adequately notified Guardian in a May 10 letter that he was appealing his LTD disability denial. His letter stated, in part (AR 1056) (emphasis added):

> I notice that there are two separate issues on the administrative appeal in this case, namely the long term disability benefit and the waiver of premium on the life insurance. In case there is some question, I am writing to clarify that *our letter of May 2 is intended as our appeal on both issues*.
>
> We look forward to your *prompt decision*.

Because Guardian did not decide plaintiff's appeal within 45 days of this letter, plaintiff's LTD claim is deemed exhausted for purposes of this review.

Defendants argue that plaintiff failed to exhaust his administrative remedies for the LTD denial because he continued to send in new material even after the May 10 letter, so defendants

6

thought the 45-day deadline for deciding his administrative appeal was tolled. This argument is unpersuasive. The May 10 letter makes clear that plaintiff was appealing the LTD denial and that Guardian had 45 days to respond with a "prompt decision." Therefore, plaintiff's LTD claim is deemed exhausted.

### 2. STANDARD OF REVIEW.

Under ERISA, courts review a denial of benefits using a de novo standard unless the benefit plan gives the administrator authority to determine eligibility for benefits. If the plan grants such authority to the administrator, the Court reviews the administrator's denial of the benefits for abuse of discretion. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009).

The parties dispute whether plaintiff's employer, Stratify, gave discretionary authority to Guardian. Here, the certificate of coverage and master policy in the administrative record expressly stated that Stratify gave Guardian the necessary discretionary authority to decide disability claims (AR 1–77): "Guardian is the Claim Fiduciary with discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims" (AR 68).

Plaintiff, however, argues that the master policy in the record is not controlling because there is no evidence in the record that the policy was signed and adopted by Stratify.

Defendants respond that the master policy has been authenticated by Lynn Mack, a Guardian employee. Mack stated in her declaration, submitted in support of defendants' motion, that the master policy in the record was issued to Stratify by Guardian (Mack Decl. ¶ 9). Moreover, the master policy contains an "Employer Rider" section which specifically names "Stratify Inc." as a "Participating Employer" under the policy (AR 78). This "Employer Rider" was signed by Guardian (AR 89).

This order does not need to decide this issue for the purposes of summary judgment, although that may well have to be resolved at trial. As discussed below, regardless of whether Guardian's denial is reviewed under a de novo or abuse of discretion standard, there are genuine disputes of material fact that preclude summary judgment.

7

### 3. GENUINE DISPUTE AS TO WHETHER GUARDIAN REASONABLY RELIED ON DR. FEINBERG.

> [When deciding the reasonableness of the plan administrator's denial of disability, t]he court must consider numerous case-specific factors, including the administrator's conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together. Under this rubric, the extent to which a conflict of interest appears to have motivated an administrator's decision is one among potentially many relevant factors that must be considered. Other factors that frequently arise in the ERISA context include the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records, whether the administrator provided its independent experts "with all of the relevant evidence[,]" and whether the administrator considered a contrary SSA disability determination

*Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629–30 (9th Cir. 2009).

When the same entity that funds an ERISA benefits plan also evaluates claims, as is the case here,

> the plan administrator faces a structural conflict of interest: since it is also the insurer, benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains money for itself. Application of the abuse of discretion standard therefore requires a more complex analysis. Simply construing the terms of the underlying plan and scanning the record for medical evidence supporting the plan administrator's decision is not enough, because a reviewing court must take into account the administrator's conflict of interest as a factor in the analysis.
>
> \*     \*     \*
>
> The weight the court assigns to the conflict factor depends on the facts and circumstances of each particular case [,including] cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate

8

> decisionmaking irrespective of whom the
> inaccuracy benefits.

*Montour*, 588 F.3d at 630–31. An egregious conflict may weigh more heavily than a minor conflict might. But in any given case, all the facts and circumstances must be considered.

> The court may consider evidence beyond that
> contained in the administrative record that was
> before the plan administrator, to determine whether
> a conflict of interest exists that would affect the
> appropriate level of judicial scrutiny.

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006).

Guardian has a structural conflict because it both adjudicates and pays disability claims. There is insufficient evidence in the administrative record to determine the weight of Guardian's structural conflict of interest. During the administrative proceeding, plaintiff had requested information about Dr. Feinberg and the company he worked for, MLS National Medical Evaluations, and their relationship with Guardian. Specifically, plaintiff had requested statistical reports showing whether Dr. Feinberg was predisposed to finding what MLS and its clients wanted, as well as statistical information generally about MLS. Defendants did not produce this information during the administrative proceeding. This order finds that there are unanswered questions that raise a genuine dispute as to how much weight to give to Guardian's conflict of interest.

The unknown connection between Dr. Feinberg, MLS, and Guardian is especially concerning in this case, where so many other physicians concluded that plaintiff was disabled. Since Guardian relied solely on the conclusions of Dr. Feinberg, discovery is needed to ascertain his connection with MLS and Guardian and to find out the extent to which he was "bought and paid for," to use the vernacular. Discovery is also needed to ascertain whether there are safeguards in place to alleviate Guardian's structural conflict of interest. Without knowing the extent of Guardian's structural conflict, this order cannot find that its decision to rely solely on Dr. Feinberg's report, which was based on a single examination, was reasonable as a matter of law.

Defendants' arguments for summary judgment are not persuasive. Defendants argue that plaintiff's subjective complaints of pain are not credible because his pain complaints are

9

inconsistent and overstated. For purposes of defendants' summary judgment, this argument is rejected. This is post-hoc attorney argument that is not backed by medical opinion and formed no part of Guardian's denial decision. Moreover, viewed in the light most favorable to plaintiff, his complaints of pain are credible, although not strong. At different times, he and his treating physicians have reported different pain and functional indexes. But this does not necessarily mean inconsistency. The consistent pattern that plausibly emerges from the administrative record is that plaintiff's reported pain and ability to function worsened over time, even after quitting his job.

Defendants argue that the disability denial was reasonable because plaintiff never received adequate treatment for his alleged pain. Viewed in the light most favorable to plaintiff, this argument is rejected. Plaintiff saw multiple physicians over many months. Plaintiff received physical treatments from his chiropractor and physical therapist. His treating physicians did not prescribe medications and for purposes of this motion, plaintiff properly relied on the professional direction of his treating physicians.

Finally, defendants argue that the "objective" medical evidence does not support plaintiff's disability claim. Viewed in the light most favorable to plaintiff, this argument is also rejected. Physical examinations by Dr. Heer and Dr. Keane revealed objective signs of disability. These treating physicians also reviewed plaintiff's x-ray and concluded that there were physiological abnormalities. The extent to which these abnormalities are disabling is subjective medical opinion, on which there is a genuine dispute between physicians.

Plaintiff's argument for summary judgment is also rejected. Plaintiff argues that if he is credited in his description of his pain and how that pain is aggravated by his work, then he is entitled to the benefits. Credibility is a question for the fact-finder. As discussed, there are conflicting medical opinions that raise a genuine dispute of material fact as to whether Guardian was reasonable in relying on the opinion of its hired physician, Dr. Feinberg.

**CONCLUSION**

For the reasons stated, the motions for summary judgment are **DENIED**. The hearing scheduled for May 23 is **VACATED**. The parties shall file a joint case management statement seven days prior to the case management conference set for **JUNE 7, 2012**.

**IT IS SO ORDERED.**

Dated: May 18, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE