IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST TARASOVSKY, <br><br> Plaintiff, <br><br> v. <br><br> STRATIFY, INC. GROUP SHORT TERM DISABILITY PLAN AND LONG TERM DISABILITY PLAN, and THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, <br><br> Defendants. | No. C 11-03359 WHA <br><br> **FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL** |

**INTRODUCTION**

In this ERISA action, plaintiff alleges that defendants improperly denied his claims for disability benefits. This order is the decision of the Court following a bench trial on the papers.

**SUMMARY**

The denial by defendant Guardian Life Insurance Company of America of Mr. Ernest Tarasovsky's claim for short-term disability benefits was not an abuse of discretion. Mr. Tarasovsky is not entitled to short-term disability benefits under the Guardian plan because his injuries are work-related, and therefore outside the scope of his insurance coverage. Guardian's denial of long-term disability benefits, however, was improper. Despite substantial evidence to the contrary from seven physicians, Guardian relied on the dubious and arbitrary conclusions of a single doctor, Dr. Steven Feinberg, as a basis for denying disability benefits to Mr. Tarasovsky. Dr. Feinberg's first report recommending that disability benefits be denied was prepared using

an incomplete medical record. After being presented with additional conflicting medical opinions from other physicians, Dr. Feinberg's subsequent reports failed to address the conflicting evidence or provide any explanation or justification for his initial findings. Dr. Feinberg's conclusions were not only outweighed by the other medical reports in the record, they were arbitrary. Guardian's denial of benefits based on Dr. Feinberg's reports was likewise arbitrary and was therefore improper whether the standard of review is *de novo* review or abuse of discretion. Plaintiff's requests for attorney's fees, costs, and prejudgment interest are **GRANTED**.

**PROCEDURAL HISTORY**

Plaintiff left his job at Stratify, Inc. on August 18, 2009, due to injury. Defendant Guardian denied plaintiff's claim for short-term disability benefits on December 28, 2009, and denied his appeal on July 27, 2010. Guardian denied plaintiff's claim for long-term disability benefits on July 29, 2010. Plaintiff timely appealed, but Guardian never issued a denial of that appeal.

Plaintiff filed this action July 7, 2011, challenging both the denial of short-term and long-term disability benefits. As stated in the joint pretrial order, plaintiff seeks the following relief:

> following a 14 day elimination period (1) twenty four weeks of short term disability benefits, followed by (2) twenty four months of long term benefits, (3) waiver of premiums under various related benefits to which he is entitled while disabled (4) prejudgment interest under ERISA (where the Court has discretion to set the rate subject to a presumption favoring the one year T-bill rate of interest) and in the alternative, (5) interest at 10% per annum under California Insurance Code 10111.2 (6) attorney's fees and costs and (7) remand to the plan to determine whether or not Mr. Tarasovsky is entitled to additional benefits under the Plan.

Defendants moved for summary judgment in April 2012; plaintiff opposed and cross-moved for summary judgment. A May 2012 order denied the cross motions for summary judgment, finding that there was a genuine issue of material fact as to whether Guardian reasonably relied on the opinion of its medical examiner Dr. Feinberg when it denied Mr. Tarasovsky's claims for disability benefits. The same order held that Mr. Tarasovsky had not

2

failed to exhaust his administrative remedies prior to filing suit in this district because plaintiff had clearly put Guardian on notice of the appeal as of May 10, 2011.

In lieu of a live bench trial, the parties agreed that the matter would be tried based on written trial briefs and a documentary trial record submitted by the parties. The parties waived oral argument and the hearing date was vacated at the request of the parties. For the trial record, the parties prepared a stipulated, joint appendix of exhibits and recorded testimony. The joint appendix, together with the administrative record previously lodged with the Court, constitute the complete trial record in this action. The parties expressly waived all evidentiary objections of any type to the trial record.

It is unnecessary for this order to cite the record for all of the findings herein. Citations will only be provided as to particulars that may assist the court of appeals. Any proposal in the parties' trial briefs that has been expressly agreed to or adopted by the opposing side shall be deemed adopted (to the extent agreed upon) even if not expressly adopted herein. In the findings, the phrase "this order finds . . . " is occasionally used to emphasize a point. The absence of this phrase, however, does not mean (and should not be construed to mean) that a statement is not a finding. All declarative statements set forth in the findings of fact are factual findings.

**STATEMENT OF FINDINGS OF FACT**

Here are the findings of fact most important to the outcome of the case.

**THE PLAN**

At the time Mr. Tarasovky left his job, Stratify provided group short-term and long-term disability insurance to its employees. The plans were underwritten by Guardian, and Guardian was both the plan administrator and the entity that determines eligibility for benefits under the plan (AR 33, 46, 118, 129).

Plaintiff argues that the master policy document in the administrative record is not controlling because there is no evidence that the policy was signed and adopted by Stratify. In response, Guardian points to a supplemental declaration of a Guardian claim investigator (TX

3

13).  This order finds that the supplemental declaration establishes that the group insurance policy documents in the record were indeed adopted by Stratify.

For the purposes of short-term disability coverage, the plan defined "disability or disabled" as follows:

> These terms mean you have physical, mental or emotional limits caused by a current sickness or injury.  And, due to these limits you are not able to perform, on a full-time basis, the major duties of your own job.  You are not disabled if you earn, or are able to earn, more than this plan's maximum allowed income earned during disability.

(AR 41 (emphasis removed)).  The short-term disability coverage did not include "job related or on the job injury" or "conditions for which benefits are payable by Workers' Compensation or like laws" (AR 41, 125).

For the purposes of long-term disability coverage, the plan defined "disability or disabled" as follows:

> These terms mean you have physical, mental or emotional limits caused by a current sickness or injury.  And, due to these limits, you are not able to perform the major duties of your own occupation or any gainful work as shown below:
>
> (1) During the elimination period and the own occupation period, you are not able to perform, on a full-time basis, the major duties of your own occupation.
>
> (2) After the end of the own occupation period, you are not able to perform, on a full-time basis, the major duties of any gainful work.

(AR 61 (emphasis removed)).

The plan defined "own occupation" as the insured's "occupation as done in the general labor market in the national economy" (AR 64).  The plan defined "gainful" work as "work for which you are, or may become, qualified by:  (a) training; (b) education; or (c) experience" (AR 62).

### MEDICAL EVIDENCE OF MR. TARASOVSKY'S DISABILITY

Between September 2008 to August 2009, Mr. Tarasovsky worked at Stratify, Inc. as an information security manager.  This order finds that as a result of his employment, Mr.

4

1  Tarasovsky developed neck, arm, and shoulder pain from extensive computer use. He left work
2  in August 2009. He was 35 years old at the time.

3  Shortly after plaintiff left his job, he saw Dr. Dale Heer, a chiropractor. Dr. Heer
4  reported that plaintiff had sustained gradual progressive upper-back and neck injury over the
5  previous several weeks. Mr. Tarasovsky's pain eventually became so great he could no longer
6  work. Dr. Heer described plaintiff's pain complaints as "constant severe pain in upper back,
7  bilateral trapezius, and neck while working at a computer." Dr. Heer concluded that plaintiff had
8  cervico thoracic myalgia and cervical radiculitis but that plaintiff could return to his regular
9  work in a month (AR 244).

10  Dr. Heer examined plaintiff again in September 2009. In his report summarizing this
11  visit, Dr. Heer wrote that plaintiff had made only slow progress. Dr. Heer recommended
12  physical therapy and subsequently continued as plaintiff's treating physician. Between October
13  2009 and June 2010, Dr. Heer saw plaintiff approximately eight times, each time reporting that
14  plaintiff's disability continued and became progressively worse (AR 373–74, 484–85, 524–30).
15  By April 2010, Dr. Heer reported that plaintiff was unable to work at a computer for longer than
16  one hour (AR 525).

17  Plaintiff began physical therapy in November 2009 with physical therapist Daniel Brady.
18  Plaintiff advised Brady that he strained "his neck over several years of computer use" and
19  symptoms "gradually became so bad that he had to stop work." The physical therapist agreed
20  and diagnosed plaintiff with cervical strain (neck strain) due to repetitive use syndrome.
21  Physical therapy was recommended two times a week for four to six weeks (AR 247).

22  In the subsequent months, Brady reported that plaintiff's strength and ability to perform
23  daily tasks improved, but his neck was still aggravated by sitting, driving, and doing desk work
24  (AR 249, 252, 262). The physical therapy reports show that Mr. Tarasovsky would begin to
25  experience pain from computer work after as few as seven to ten minutes (AR 252, 470). By
26  March 2010, plaintiff stopped physical therapy.

27  In February 2010, plaintiff saw another chiropractor, Dr. Rachman Chung, who also
28  diagnosed plaintiff with injuries in the neck and back: sprain/strain, cervical segmental

5

1  dysfunction, thoracic segmental dysfunction, lumbar segmental dysfunction, and poor balance
2  (AR 257). On February 26, 2010, a medical procedure performed by Dr. Chung aggravated Mr.
3  Tarasovsky's existing injuries (AR 316).

4  In April 2010, Dr. Moses Jacob, D.C., conducted a neutral medical-legal evaluation of
5  Mr. Tarasovsky as an "Agreed Medical Examiner" in connection with a worker's compensation
6  proceeding. Dr. Jacob conducted a physical examination of Mr. Tarasovsky and reviewed a
7  substantial quantity of medical information relating to Mr. Tarasovsky's medical condition,
8  including the reports of other physicians, x-rays, and Mr. Tarasovsky's deposition testimony. At
9  the time, Mr. Tarasovsky reported being able to perform 10 to 40 minutes of computer work at a
10 time without symptoms, and pain levels ranging from one to seven on a scale of ten. Dr. Jacob
11 prepared a medical-legal report which was signed and sworn under California Labor Code
12 Section 4628. Dr. Jacob diagnosed plaintiff with "[c]ervical spine sprain/strain, chronic, with
13 associated right brachial neuritis/radiculitis without radiculopathy" and "[r]epetitive strain injury
14 right upper extremity with measured grip loss." Dr. Jacob also concluded that plaintiff could
15 return to work if he were permitted to take appropriate breaks and if there were limitations on
16 continuous computer usage (AR 301–11).

17 In May 2010, plaintiff went to another medical provider, Dr. Gerald Keane, who
18 reviewed plaintiff's x-rays and noted some decrease in plaintiff's anticipated cervical lordosis
19 (curve in the upper spine), and some very slight upper thoracic scoliosis (side to side curve), but
20 that the disc spaces in the spine were well preserved and there were no fractures (AR 565). On
21 physical examination, Dr. Keane noted that Tinel's signs, a way to detect irritated nerves, were
22 negative over the median and ulnar nerves on the right in the upper extremity at the elbow and
23 wrist. In conclusion, Dr. Keane offered a diagnosis of "non-specific cervical pain with upper
24 extremity referral" (AR 566).

25 Also in May 2010, plaintiff saw Dr. Steven Feinberg, M.D., as part of an "independent
26 medical evaluation" arranged by Guardian. Dr. Feinberg conducted a review of plaintiff's
27 occupational duties and medical records, discussed with plaintiff his pain complaints, and
28 performed a physical examination. The report by Dr. Chung from February 2010, the medical-

6

legal report prepared by Dr. Jacob in April 2010, and the report of Dr. Keane from May 2010, as well as recent MRIs were *not* provided to Dr. Feinberg.

Dr. Feinberg concluded that plaintiff presented himself in a "credible manner," but that his physical examination was completely normal other than a reduced right grip. Therefore, Dr. Feinberg found that plaintiff was "somatically preoccupied" (*i.e.*, had complaints of pain without physical manifestation). Dr. Feinberg also concluded that, other than an initial 30-day flare-up in the days before plaintiff quit work, plaintiff was capable of returning to his job as an information security manager (AR 1230–36).

In June 2010, plaintiff had another spinal MRI taken. Dr. Avanti Ambekar, M.D., issued a report identifying several abnormalities. The abnormalities included disc bulges and protrusions, facet arthropathy, and annular tears (AR 317–18).

In response to a request from Guardian, in June 2010 Dr. Heer issued a report commenting on Dr. Feinberg's report. Drawing on a recent office visit and his long-term experience treating Mr. Tarasovsky, Dr. Heer concluded that Mr. Tarasovsky "should *eventually* be able to return to work. He may, however, need to undergo pain management treatment to help him learn how to reduce his pain to a manageable level." Dr. Heer also concluded that Mr. Tarasovsky should remain on disability until he had undergone another MRI and had some pain management education (AR 455–56 (emphasis added)).

In support of his contentions, Dr. Heer explained (AR 455–56):

> In Dr. Feinberg's evaluation he states there was no palpatory discomfort of the musculature and that Mr. Tarasovsky had full and unencumbered cervical range of motion. In my evaluation on initial intake and in my latest office visit on 5/26/10 I did not find this to be true. There was significant discomfort of the cervical and thoracic musculature on digital palpation. There was significant reduction of range of motion of the cervical spine in extension, right lateral flexion, and right rotation . . . cervical x-rays revealed aberrant mechanical motion at C5 on right lateral bending study, as well as narrowing of the right neural foramen on right posterior oblique view.

In July 2010, Dr. Heer's report disputing Dr. Feinberg's findings was sent to Dr. Feinberg. Dr. Feinberg also received the prior medical reports from Dr. Keane and Dr. Jacob that were absent from the materials provided for his initial review. Dr. Feinberg then issued a

brief addendum to his earlier report. Without explanation or substantive analysis, Dr. Feinberg wrote that there was nothing in the other doctors' reports that changed his opinions (AR 1286).

In April 2011, Mr. Tarasovsky was evaluated by Dr. Melvin Friedman, D.O. Dr. Friedman reviewed plaintiff's MRI records and noted several significant findings, including disc protrusions, an annular tear, and facet arthropathy. Dr. Friedman concluded that plaintiff was disabled but that with appropriate treatment he could eventually return to work (AR 319–20).

In June 2011, Dr. Keane issued another report summarizing his experience treating Mr. Tarasovsky. Dr. Keane wrote that plaintiff was not "really capable of going back to his prior employment." Dr. Keane stated plaintiff had persistent neurologic symptoms and he had not responded to conservative care and that plaintiff's "prior work [was not] within his ability to carry out without risk of further aggravation" (AR 1079–80).

**OTHER EVIDENCE OF DISABILITY**

The record contains statements by Mr. Tarasovsky's wife, Rimma Tarasovsky. Mrs. Tarasovsky reports that at the time Mr. Tarasovsky left work, their two children were three years old and one month old. After that point, it was difficult for Mr. Tarasovsky to talk to and play with his children. He began to eat his dinner lying down on a yoga mat or standing up. He stopped participating in household chores. He slept poorly and could no longer visit family living more than 20 minutes' drive away. And, although he previously had taken "meticulous" care of his car, he no longer took care of the car on his own (AR 323).

Certain other evidence in the record supports Mr. Tarasovsky's claims. Prior to leaving work, Mr. Tarasovsky was making $125,000 per year (AR 171). He also had rights to $50,000 in stock options (AR 356). Because he stopped working, 80% of Mr. Tarasovsky's stock options did not vest (AR 354). His disability benefits totaled approximately $75,000 per year (AR 171).

**DENIAL OF DISABILITY CLAIMS**

Mr. Tarasovsky first filed for short-term disability benefits in December 2009. At the end of that month, Guardian denied Mr. Tarasovsky's claim on the grounds that the injury was work-related and was not medically supported.

8

Following the submission of additional documentation from Mr. Tarasovsky, Guardian conducted an internal review in February 2010 to determine if plaintiff's medical documentation supported his disability claim. Guardian's internal reviewer initially concluded that plaintiff's disability was not supported by the medical record (AR 156–58, 174–76). The basis was the lack of diagnostic studies in the record. Another reason given was that there did not appear to have been any comprehensive treatment, including physical therapy and medications (AR 176). Guardian notified plaintiff of its conclusions, and plaintiff then supplemented his claim with more of the previously-discussed medical reports from Dr. Heer, Dr. Chung, and Mr. Brady, and an x-ray ordered by Dr. Heer (AR 331).

Plaintiff filed a long-term disability claim in March 2010. Guardian requested additional documentation from plaintiff and decided to arrange for an "independent medical examination." Guardian contacted and retained MLS National Evaluation Services to schedule an appointment for plaintiff. MLS then scheduled plaintiff's examination with Dr. Feinberg, which went forward (AR 1135–36, 69). As stated above, Dr. Feinberg concluded that plaintiff was somatically preoccupied and was capable of returning to his job as an information security manager (AR 1230–36).

Guardian gave plaintiff an opportunity to respond to Dr. Feinberg's conclusions. Plaintiff provided a response from Dr. Heer, who disagreed with Dr. Feinberg's findings and provided justifications for his own conclusions. The conflicting report of Dr. Heer, along with conflicting medical reports from Dr. Keane and Dr. Jacob, were sent to Dr. Feinberg for review, who restated his earlier conclusions without explanation or analysis (AR 1286).

Based on Dr. Feinberg's opinions, Guardian maintained the denial of plaintiff's short-term disability claim and denied plaintiff's long-term disability claim (AR 1309–16, 1333–37). Guardian specifically concluded that the medical evidence did not support a finding of disability for more than 30 days after plaintiff left work. The reason given to plaintiff was that "treating physicians have not provided adequate medical evidence in support of their opinion . . . . According to the findings of the [independent medical evaluation] by Dr. Feinberg, you are capable of performing your job." Guardian also relied on the fact that Dr. Feinberg did not

9

change his opinion after reviewing the responses from Mr. Tarasovky's treating physicians and independent medical examiner (AR 1312–16). Guardian's denial did not explain why greater deference was given to Dr. Feinberg's opinions, as opposed to plaintiff's treating physicians or the neutral Agreed Medical Examiner, Dr. Jacob.

Following this communication from Guardian, plaintiff's counsel sent defendants a letter requesting that the appeal period be tolled until plaintiff notified Guardian that all supporting information had been submitted (AR 1029). Plaintiff continued to submit documentation until June, 2011, and never notified Guardian that the record of supporting information was complete. In a letter dated May 10, 2011, however, plaintiff stated that an earlier letter was intended to be the start of the administrative appeal process (AR 1056). A prior order ruled that the letter dated May 10 put Guardian on notice of plaintiff's long-term disability denial appeal (Dkt. No. 29 at 6). Guardian did not decide the appeal within the statutory 45-day period and plaintiff's administrative claim was thereby held exhausted (*ibid.*). Plaintiff then filed the instant suit in July 2011.

**ANALYSIS AND CONCLUSIONS OF LAW**

The default standard of review in a denial of disability benefits action under ERISA is *de novo*. If the plan confers discretion on the plan administrator to determine eligibility for benefits, however, then the standard of review shifts to abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the standard of review is *de novo,* "district courts have a responsibility under the ERISA framework to undertake an independent and thorough inspection of an administrator's decision." *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006). Plaintiff carries the burden of proof to show that he was entitled to benefits under the plan. *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

Our court of appeals recently summarized a court's role in reviewing a plan administrator's denial of disability under an abuse-of-discretion standard, with structural conflict of interest, as follows:

> Under this deferential standard, a plan administrator's decision will not be disturbed if reasonable. This reasonableness standard

> requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record. This abuse of discretion standard, however, is not the end of the story. Instead, the degree of skepticism with which we regard a plan administrator's decision when determining whether the administrator abused its discretion varies based upon the extent to which the decision appears to have been affected by a conflict of interest.
>
> \*          \*          \*
>
> While not altering the standard of review itself, the existence of a conflict of interest is a factor to be considered in determining whether a plan administrator has abused its discretion. The weight of this factor depends upon the likelihood that the conflict impacted the administrator's decisionmaking. Where, for example, an insurer has taken active steps to reduce potential bias and to promote accuracy, the conflict may be given minimal weight in reviewing the insurer's benefits decisions. In contrast, where circumstances suggest a higher likelihood that the conflict affected the benefits decision, the conflict should prove more important (perhaps of great importance).

*Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (internal quotation marks and citations omitted).

Procedural irregularities may also affect the standard of review. In the ordinary situation, procedural errors are a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion. If, however, the plan administrator's procedural defalcations amount to a wholesale violation of ERISA, *de novo* review applies. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971–74 (9th Cir. 2006).

**SHORT-TERM DISABILITY CLAIM**

Plaintiff concedes the appropriate standard of review on his short-term disability claim is abuse of discretion (Dkt. No. 53 at 11). Guardian denied plaintiff's short-term disability claims on the grounds that his injury was work-related and because Mr. Tarasovsky failed to submit sufficient medical evidence supporting his disability.

This order finds that Guardian's short-term disability denial was not an abuse of discretion insofar as it was based on the conclusion that plaintiff's injury was work-related. The plan language expressly excludes "job related or on the job injury" from short-term disability coverage (AR 41, 125). The evidence in the record overwhelmingly supports the conclusion that

1    Mr. Tarasovsky's pain complaints are the result of excessive computer use at work.  Plaintiff's
2    trial briefs do not argue to the contrary in any substantial manner.  Indeed, Mr. Tarasovsky
3    himself represented to Guardian during the appeal process that his disability is a work-related
4    disability (AR 1108).  Guardian's denial of short-term disability benefits was reasonable and will
5    not be disturbed.

**LONG-TERM DISABILITY CLAIM**

**1.    STANDARD OF REVIEW.**

The plan language plainly gives Guardian discretion to make coverage decisions, which would normally entail abuse-of-discretion review.  Here, however, Guardian did not issue any decision within the time period prescribed by Department of Labor ERISA regulations.  Thus, plaintiff argues, Guardian did not exercise any discretion and the appropriate standard of review is *de novo*.  This order agrees.

As explained above, a summary judgment order ruled that a letter dated May 10, 2011, put Guardian on notice of plaintiff's appeal of the long-term disability denial (Dkt. No. 29 at 6). Guardian did not decide the appeal within the statutory 45-day period, and plaintiff's administrative claim was thereby exhausted (*ibid.*).  Department of Labor regulations further explain that such exhaustion entitles the claimant to "pursue any available remedies . . . on the basis that the plan has failed to provide a *reasonable* claims procedure." 29 C.F.R. 2560.503-1(l) (emphasis added).

Put differently, Guardian's failure to timely decide the appeal was *per se* unreasonable. This order finds that application of a *de novo* standard of review is an appropriate consequence of this procedural defalcation.  This is consistent with our court of appeals' decision in *Jebian v. Hewlett-Packard Co. Empl. Benefits Org. Income Prot. Plan*, 349 F.3d 1098 (9th Cir. 2003). The court in *Jebian* held that "where, according to plan and regulatory language, a claim is 'deemed . . . denied' on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is usually to be reviewed *de novo*." *Id*. at 1103.

*Jebian* noted that "deference may be due to a plan administrator that is engaged in a good faith attempt to comply with its deadlines when they lapse." *Ibid*.  Like *Jebian*, this is not such a

12

1    case. Guardian provides no evidence that it was engaged in a good faith attempt to comply with
2    the deadline. Instead, Guardian claims that plaintiff was "mak[ing] havoc with the
3    administrative process" by submitting additional information. This attempt to shift the blame to
4    plaintiff is insufficient to establish good faith on the part of Guardian.

5    Guardian also argues that plaintiff never perfected his appeal because he failed to
6    adequately communicate with Guardian. This argument is foreclosed by the Court's summary
7    judgment order, which held that plaintiff adequately put Guardian on notice of the appeal (Dkt.
8    No. 29 at 6). Guardian's opportunity to challenge this ruling expired long ago. (Counsel will
9    please make clear to the court of appeals that new evidence in the trial record is beside the point
10   and that the record on this issue is the one on summary judgment.)

11   Guardian further argues that it was entitled to an extension of time to complete the appeal
12   under 29 C.F.R. 2560.503-1(i)(1)(i). This argument is likewise foreclosed by the summary
13   judgment order, which definitively ruled that plaintiff's administrative claim was exhausted. In
14   addition, this argument fails because there is no evidence (and Guardian does not argue) that
15   Guardian provided timely written notice of the extension request as required by the regulation.

16   **2.    GUARDIAN'S DENIAL OF LONG-TERM DISABILITY BENEFITS WAS ERRONEOUS.**

17   Guardian denied plaintiff's claim for long-term disability benefits because it concluded
18   the medical record did not support a finding of disability for a period of more than 30 days after
19   plaintiff left his job (AR 1309). Following a thorough and independent review of the evidence,
20   this order finds that Guardian's denial of long-term disability benefits was erroneous. The great
21   weight of the evidence supported the conclusion that Mr. Tarasovsky was disabled and unable to
22   work for the full 24-month long-term disability period specified by the plan. Of the eight
23   physicians whose assessments were in the record, seven of them noted significant spinal
24   conditions and/or diagnosed plaintiff as disabled. The only physician who concluded that
25   plaintiff could return to work immediately was the physician retained by Guardian: Dr.
26   Feinberg.

27   The record provides no basis for weighing Dr. Feinberg's opinions more heavily than
28   those of the other physicians. Weighing the evidence goes beyond a simple numerical tally of

13

seven doctors to one, however. Particularly noteworthy in this record is the presence of a second third-party evaluator: Dr. Moses Jacob. Dr. Jacob concluded that plaintiff could only return to work if appropriate accommodations were implemented, such as limitations on computer usage. If such accommodations were not possible (and Guardian does not argue that plaintiff would have been able to perform his job with only limited use of a computer), Dr. Jacob recommended that plaintiff be deemed eligible for disability benefits. This contrasts sharply with Dr. Feinberg's conclusion that plaintiff was only disabled for 30 days after his initial injury, and had been non-disabled ever since. Both Dr. Jacob and Dr. Feinberg conducted a physical evaluation of plaintiff and reviewed prior medical reports. Dr. Jacob's report, however, was signed and sworn under penalty of perjury (AR 310–11). This order finds that, all else being equal, this additional indicia of reliability entitles Dr. Jacob's report to greater weight.

Similarly, Guardian does not make any attempt to cast doubt on the credibility of Mr. Tarasovsky's treating physicians. To the contrary, Dr. Feinberg approvingly refers to Dr. Keane — who concluded that Mr. Tarasovsky was unable to return to work — as a "respected physiatrist" (AR 1243).

Guardian objects that Mr. Tarasovsky's descriptions of the intensity of his pain to his doctors varied over time. Guardian also notes that when Mr. Tarasovsky was deposed in connection with a worker's compensation proceeding, he was able to drive for 35–45 minutes and sit for a total of two hours — punctuated by three rest breaks — but did not report any pain that day. These facts do not compel the conclusion that Mr. Tarasovsky's complaints were not credible. Mr. Tarasovsky told his doctors and testified at his deposition that his pain varied. The moderate level of variation reflected in his doctors' reports is consistent with these statements. And, Mr. Tarasovsky's ability to be deposed for 40 minutes at a time without pain did not demonstrate that he would be able to return to work.

### 3. IN THE ALTERNATIVE, GUARDIAN'S DENIAL OF LONG-TERM DISABILITY BENEFITS WAS AN ABUSE OF DISCRETION.

This order finds, in the alternative, that application of an abuse of discretion standard of review would not change the result. As noted above, under the abuse of discretion standard a plan administrator's denial of benefits will only be disturbed if it is (1) illogical, (2) implausible,

14

or (3) without support in inferences that may be drawn from the facts in the record. *Stephan*, 697 F.3d at 929. Under appropriate circumstances, a plan administrator may even rely on a single doctor's report to deny benefits:

> An ERISA administrator's exercise of its discretion to adjudicate claims is not a mere exercise in expert poll-taking. We hold that a mere tally of experts is insufficient to demonstrate that an ERISA fiduciary has abused its discretion, for even a single *persuasive* medical opinion may constitute substantial evidence upon which a plan administrator may rely in adjudicating a claim.

*Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1179 (9th Cir. 2005) (emphasis added).

Standing alone, Guardian's reliance on Dr. Feinberg, despite the uniformly conflicting reports of other doctors, was not improper. If a plan administrator chooses a single in-house doctor as its champion, however, the evidence from that doctor must be *persuasive*. Dr. Feinberg's reports failed to meet this standard.

Dr. Feinberg was missing important medical evidence when he prepared his first report. Dr. Feinberg himself noted that he was not provided with the February 2010 report by Dr. Chung, the April 2010 medical-legal report prepared by Dr. Jacob, and the May 2010 report of Dr. Keane, as well as recent MRIs (AR 1235). Under the circumstances, and in the face of overwhelming evidence, this rendered Dr. Feinberg's first report an unreliable basis on which to deny benefits.

Guardian requested comments on Dr. Feinberg's report from plaintiff's long-time treating physician, Dr. Heer. Dr. Heer's report and commentary directly challenged Dr. Feinberg's conclusions and set up distinct analytical disputes for both Dr. Feinberg and Guardian to consider. Dr. Feinberg was also provided with earlier reports from Dr. Jacob and Dr. Keane that further supported a conclusion that plaintiff was disabled. Dr. Feinberg's addendum report from July 2010 summarized the conflicting opinions of these three physicians. Yet, it did not comment on them in any substantive manner. Dr. Feinberg simply stated: "[t]here is nothing in the reports from Dr. Moses [*sic*] or Dr. Keane that would cause me to change my previously stated opinion" (AR 1286).

15

Dr. Feinberg's second report was not a persuasive medical opinion. Mere summary of conflicting evidence is not enough. Under the circumstances here, Guardian was obligated to respond to plaintiff's factual and analytical challenges. Dr. Feinberg's second report did not provide any rebuttal of the conflicting evidence — it did not even state the factual basis for re-affirming his conclusions. It was merely an arbitrary denial of the significance of conflicting evidence.

Guardian based its denial of plaintiff's request for long-term disability benefits on Dr. Feinberg's incomplete and arbitrary conclusions. Guardian's conclusion was therefore equally arbitrary. This was an abuse of discretion.[*]

### 4. WAIVER OF PREMIUM BENEFITS.

In the parties' joint proposed pretrial order, plaintiff requests a award of "waiver of premiums under various related benefits to which he is entitled while disabled" (Dkt. No. 39 at 2). This appears to be a reference to a decision by Guardian to deny plaintiff benefits under a separate "waiver of premium" life insurance plan (AR 1245). Both sides' trial briefs are silent on this issue. Because plaintiff has not advanced cogent argument or evidence in support of this request for relief, plaintiff's challenge to Guardian's decision fails.

### 5. PREJUDGMENT INTEREST.

A district court has discretion to award prejudgment interest when awarding ERISA benefits. *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007). Given the delays caused by Guardian's failure to decide plaintiff's appeal and the holding that Guardian's denial of benefits was indefensible under any standard of review, plaintiff's request for prejudgment interest is **GRANTED**.

"Generally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Id.*

---

[*] Because this order finds that Guardian's decision was improper under both *de novo* and abuse of discretion review, it is not necessary to reach the parties' contentions regarding Dr. Feinberg's possible bias. Nor is it necessary to evaluate factors cited by the parties that might temper or strengthen abuse of discretion review.

16

Plaintiff has not adduced evidence permitting a factual finding that the equities of the case require a modified interest rate. This order therefore holds that prejudgment interest shall be calculated per 28 U.S.C. 1961. Plaintiff's request in the alternative for 10% per annum interest under California Insurance Code Section 10111.2 is **DENIED**.

### 6. ATTORNEY'S FEES.

"As a general rule, the prevailing party on an ERISA claim is entitled to attorney's fees, unless special circumstances would render such an award unjust." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008). There are no special circumstances present here. Accordingly, plaintiff's request for attorney's fees and costs is **GRANTED**. Because the ERISA attorney's fees statute, 29 U.S.C. 1132(g)(1), does not require that a plaintiff be a "prevailing" party to recover fees, plaintiff's fee petition need not be discounted to reflect plaintiff's loss on the short-term disability and waiver of premium claims. *See Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2156–59 (2010). The parties must follow the procedure set out in the accompanying order.

### 7. REMAND.

In the joint proposed pretrial order, Guardian requests that if plaintiff prevails that the parties be permitted to meet and confer concerning the amount of benefits owed. If agreement is not reached, Guardian requests that the claim be remanded back to Guardian to calculate benefits owed (Dkt. No. 39 at 2). Plaintiff agrees that the parties should be permitted to meet and confer to determine "offsets" applicable to any benefits due but does not comment on the possibility of a remand for calculation of benefits (Dkt. No. 53 at 7–8). A remand will not be allowed. That would be a recipe for more delay. Instead, counsel shall meet and confer regarding the total amount of benefits, interest, and fees due and, if they reach agreement, file a stipulated judgment by **JUNE 7, 2013, AT NOON**. If the parties fail to reach agreement, determination of this issue will likely be referred to a special master.

One issue will be remanded, however. Plaintiff contends that he is eligible for additional disability benefits under a portion of the plan relating to whether his injury prevents him from working in "any occupation" as defined by the plan. According to plaintiff, "the parties agree

17

that defendants are entitled to a remand to determine his eligibility for those benefits" (*ibid.*). Defendant does not object or otherwise comment on this issue. Whether plaintiff is eligible for "any occupation" benefits was not teed up for determination. Accordingly, the action will be remanded back to Guardian for determination whether plaintiff is eligible for "any occupation" benefits following entry of judgment.

## CONCLUSION

Guardian's denial of 24 weeks of short-term disability benefits was not erroneous. Plaintiff's challenge to Guardian's denial of waiver of premium benefits fails because plaintiff did not meet his burden of persuasion. Judgment in favor of Guardian on these issues is **GRANTED**.

Guardian's denial of 24 months of long-term disability benefits was incorrect under either a *de novo* or an abuse of discretion standard of review. Judgment on this issue in favor of plaintiff is **GRANTED**. Plaintiff's requests for attorney's fees, costs, and prejudgment interest are **GRANTED**. Regarding attorney's fees, the parties must follow the procedure set out in the accompanying order. The parties shall meet and confer to calculate long-term disability benefits due and file a stipulated judgment by **JUNE 7, 2013, AT NOON**; otherwise, the issue will likely be referred to a special master. The issue of whether plaintiff is eligible for "any occupation" disability benefits will be remanded following entry of judgment.

**IT IS SO ORDERED.**

Dated: May 17, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE